Argued and submitted July 11, reversed and remanded January 8, 1985

In the Matter of the Compensation of
Olive J. Elwood, Claimant.

ELWOOD,
*Respondent on Review,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Petitioner on Review.*

(80-10264; CA A27555; SC S30606)

693 P2d 641

Thomas A. Huntsberger, Springfield, argued the cause and filed Response for Respondent on Review. With him on the briefs were Ackerman, DeWenter & Huntsberger, Springfield.

Darrell E. Bewley, Assistant Attorney General, Salem, filed Petition on Review for Petitioner on Review. With him on the briefs were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

LINDE, J.

## LINDE, J.

▪ The occupational disease law provides that a worker is entitled to compensation as for an "injury," ORS 656.804, if the worker contracts a disease that "arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular employment therein." ORS 656.802. Mental illness can be an occupational disease, *James v. SAIF,* 290 Or 343, 624 P2d 565 (1981), if it arises from actual rather than imaginary job-related conditions. *McGarrah v. SAIF,* 296 Or 145, 675 P2d 159 (1983). The present case involves the question under what circumstances a claimant's discharge from employment can be one of the job-related conditions giving rise to a compensable occupational disease.

Claimant worked as a registered nurse for McKenzie Manor Home from 1966 to 1976, when she was discharged. In 1980 she filed a claim for compensation for occupational disease caused by emotional stress, which she attributed to a demanding work schedule, to employer pressure to quit her job, and to her eventual discharge. SAIF, the employer's insurer, denied the claim on grounds that the condition for which compensation was claimed did not arise from claimant's employment. The referee and the Workers Compensation Board denied the claim. The Court of Appeals reversed and directed the board to order acceptance of the claim. *Elwood v. SAIF,* 67 Or App 134, 676 P2d 922 (1984). Having allowed review to consider the question of discharge as a causative factor in an occupational disease claim, we reverse and remand the decision to the Court of Appeals.

▪ Because the Court of Appeals has the final word on disputed factual issues, we do not recite the medical evidence in detail. *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971). In holding claimant's "mental disorder" compensable, 67 Or App at 141, 676 P2d at 925, the Court of Appeals made a number of findings necessary to support its conclusion. The court summarized claimant's testimony that she believed other nursing personnel showed disrespect for her and encouraged others to disrespect her, denigrated her work, blamed her for the disappearance of patients' drugs and alcoholic beverages, and apparently sought to force her to quit her job. The employer denied that it wanted to force claimant

to resign, but eventually it did request and received her resignation.

The court found that "numerous events and conditions of the employment, including her termination, were real and capable of producing stress when viewed objectively," that she suffered from a "mental disorder" for which she was given medication, that her illness was a reason for her requested resignation, and that "real, stressful events and conditions of plaintiff's employment, including the termination, when compared to the non-employment exposure, were the major contributing causes of her mental disorder." 67 Or App at 138-39, 676 P2d at 924-25. These findings satisfy the criteria for compensability of a psychological occupational disease as stated in *McGarrah v. SAIF, supra,* except for one problem. The problem is the court's inclusion of claimant's "termination" among the "stressful events and conditions of [her] employment" that made the resulting mental disorder compensable.

The insurer argues that the event of termination is not a risk of the employment but rather a removal from the risks of the employment, that claimant's depression did not arise from her job duties but from her release from those duties, and that therefore it did not "arise out of and in the scope of the employment" for purposes of the occupational disease law. Claimant responds that the Court of Appeals referred to her termination not as a cause in isolation but in the context of other stressful events that all were part of her "work experience" leading to her mental disorder.

It is not strictly accurate to say that termination (and its attendant stress) is not a risk of employment; indeed, logically termination can only be a risk of employment as death can be a risk only of life. The question of compensability cannot be answered in terms of causation. It is entirely plausible that a person might suffer a more devastating psychological reaction to losing a job than to being without a job. Nor can it be answered on the assumption that the stress of termination begins at the moment when the employment ends, for that is not necessarily so, for instance, when an employee is told that her job will terminate six months in the future and in consequence worries herself into a mental illness.

■ If an employe is demoted and develops a mental illness as a result of the events of the demotion or the changed status or assignment, it would be difficult to argue that the illness was not "work connected" as that concept was used in *Rogers v. SAIF*, 289 Or 633, 616 P2d 485 (1983). Nevertheless, we agree with the insurer that the occupational disease law did not make illness from losing a job a compensable risk of the job. It would be anomalous to compensate for the mental distress consequent upon loss of employment more than for the traditionally more likely strains of such a loss on the unemployed person's physical health, yet the concept of occupational disease has not been extended to malnutrition and inadequate medical care resulting from loss of employment.

■ The line, we think, runs between illness resulting from the stress of actual or anticipated unemployment, which is not compensable, and illness resulting from the circumstances and manner of discharge, which can be regarded as events still intrinsic to the employment relationship before termination and can lead to compensation. Such events might produce a stress-caused illness irrespective of unemployment, even, for instance, if the employe knew that a better job was available elsewhere. Like many distinctions in the law, this line may not always be clear and sharp in the great factual variety of discrete instances. The reviewing tribunals must take care not to introduce fault concepts into the compensation law. The principle, however, is that stressful events accompanying the discharge can make a resulting illness compensable; illness resulting from the mere act of discharge and loss of the job is not.

The Court of Appeals opinion twice speaks of "including" the discharge among the stressful events and conditions of plaintiff's employment that led to her mental disorder. From the court's phrasing, we cannot be certain whether the court considered the circumstances of the employer's request for claimant's resignation as one aggravating element among others that caused her illness, or whether it believed that she became ill in substantial part because she lost her job. Because this court does not make such factual determinations for itself, we reverse the decision of the Court of Appeals and remand the case to that court for further proceedings.