In the Matter of the Compensation
of Olive J. Elwood, Claimant.

ELWOOD,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(80-10264; CA A27555)

697 P2d 567

Thomas A. Huntsberger, Springfield, appeared for petitioner. With him were Ackerman, DeWenter & Huntsberger, Springfield.

Darrell E. Bewley, Assistant Attorney General, Salem, appeared for respondent. With him were Dave Frohnmayer,

Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

The Supreme Court reversed and remanded our decision, *Elwood v. SAIF,* 67 Or App 134, 676 P2d 922 (1984), for further proceedings, stating:

"From the court's phrasing, we cannot be certain whether the court considered the circumstances of the employer's request for claimant's resignation as one aggravating element among others that caused her illness, or whether it believed that she became ill in substantial part because she lost her job. Because this court does not make such factual determinations for itself, we reverse the decision of the Court of Appeals and remand the case to that court for further proceedings." *Elwood v. SAIF,* 298 Or 429, 433, 693 P2d 641 (1985).

The court commented:

"The line, we think, runs between illness resulting from the stress of actual or anticipated unemployment, which is not compensable, and illness resulting from the circumstances and manner of discharge, which can be regarded as events still intrinsic to the employment relationship before termination and can lead to compensation. * * * The principle, however, is that stressful events accompanying the discharge can make a resulting illness compensable; illness resulting from the mere act of discharge and loss of the job is not." 298 Or at 433.

Our opinion had twice mentioned the "termination" as one of the stressful events and conditions of plaintiff's employment that caused her mental disorder.[1] The Supreme Court could not determine on which side of its line we intended our opinion to fall.

Our opinion recites the facts of claimant's employment relationship and the stressful events accompanying the discharge:

"Claimant, age 54, was a registered nurse for 24 years. She worked full time for McKenzie Manor Home from 1966 until

---

[1] Our opinion stated:

"The record shows that numerous events and conditions of the employment, including her termination, were real and capable of producing stress when viewed objectively." 67 Or App at 138.

"We also find that real, stressful events and conditions of plaintiff's employment, including the termination, when compared to the non-employment exposure, were the major contributing causes of her mental disorder." 67 Or App at 139.

1976. For the last nine years of that employment, she was the assistant director of nurses. She worked 40 hours a week with occasional week end or over-time work and rarely took vacations. She was responsible for a ward on one shift, including supervision of nurses and aides, medications for 75 patients and other administrative duties. She had frequent contact with visitors and patients' families, had to meet demands from patients and other nurses and had the responsibility of director of nurses if that person was away or ill.

"The referee found claimant's testimony 'essentially credible.' Claimant testified that nurses made unnecessary phone calls to the doctor about patients under her general supervision, disobeyed her instructions, ignored her, lost respect for her and encouraged aides and orderlies to disrespect her, denigrated the quality of her nursing care to families of patients and told management about complaints of patients and their families about her work. She had numerous conflicts with other nurses during the last few years of her service. She also testified that drugs and alcoholic beverages used by the residents disappeared without explanation from her ward and that she was told by an aide two or three days after she was terminated that there were rumors at the Home that she had been drinking the patients' alcohol and taking drugs. Claimant believed that that was 'devastating' to her reputation.

"Claimant testified that, because she was the logical choice to become the new director of nursing, the director and the nurses were attempting to force her to quit. She also testified that the administrator admitted that claimant was 'being run off,' but the administrator denied that. Claimant said that the director of nurses told her that her impression that the nurses were 'giving her a bad time' was 'in her imagination.'

"Although claimant had received above average to outstanding annual performance evaluations, the insurer submitted evidence that her work performance began to decline in about 1974, that she had failed to keep adequate records and charts in conformance with state regulations and had been told of the deficiency, that she was disrespectful to the administrator and one of the physicians and that patients complained concerning the care they received from her.

"The record does not disclose whether the employer or other nurses, in fact, wished to force claimant out, whether claimant's imagination led her to this perception or whether there was good cause for her termination. It is clear that the employer requested and received claimant's resignation on

April 1, 1976. Although the employer denied that it was trying to force claimant out, it did not try to prove that the events on which claimant based her belief that people did not want her there were not real. The record shows that numerous events and conditions of the employment, including her termination, were real and capable of producing stress when viewed objectively. * * *

"* * * * *

"Claimant testified that, at the meeting at which her resignation was demanded, the director of nurses, the administrator and the owner told her that she was being terminated in part because of her illness. Although the administrator testified that claimant's termination was the result of her failure to keep proper records, the employer listed the basis of termination on its form as 'asked to resign as health didn't seem to be too good.' The director of nurses wrote that claimant 'was asked to resign because of inability in keeping up with workload which I feel was due to health reasons.' Claimant testified that one of the aides had told her that the director of nurses had told the aides that next morning that I was emotionally ill and would not be returning to work." 67 Or App at 137.

Our references to "termination" referred to the circumstances and manner of that termination. We hold that the "stressful events accompanying [claimant's] discharge" contributed materially to her illness; that is, that the circumstances and manner of employer's request for claimant's resignation were material, aggravating elements, among others, that caused her illness. We add these findings to our former opinion, which, as supplemented, we readopt.

Reversed and remanded with instructions to accept the claim.