Submitted on remand from the Oregon Supreme Court April 9, reversed and
remanded August 25, 1993

## STATE OF OREGON,
*Appellant,*

*v.*

## CRAIG EUGENE SWEET,
*Respondent.*

## (89-3829-C-3; CA A64525)

858 P2d 477

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Ann Kelley, Assistant Attorney General, Salem, for appellant.

Joel B. Reeder and Joel B. Reeder, P.C., Medford, for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant was charged with driving under the influence of intoxicants (DUII) and possession of a controlled substance. ORS 813.010; ORS 475.992(4). The trial court granted his motion to suppress "evidence concerning any controlled substance" that was found in his car. The state appealed, ORS 138.060(3),[1] and we affirmed without opinion. 107 Or App 383, 811 P2d 150 (1991). The Supreme Court remanded the case to us for further consideration in the light of its decision in *State v. Rhodes*, 315 Or 191, 843 P2d 927 (1992). 315 Or 441, 845 P2d 1294 (1993). We reverse.

Officer Garvin spotted defendant's car on a public street in the city of Central Point. The car was parked, but the motor was running. Defendant was in the car with his head tilted back and his arm out the window. He was not moving. Garvin became concerned about defendant's welfare. She drove around the block and pulled up behind defendant's car without activating her overhead lights. She got out of her patrol car and walked up to the driver's side of the car. When she got to the driver's window, which was open, she could smell the aroma of alcohol through the open window.

Garvin tried to rouse defendant by speaking to him. He did not respond, so she shook him to wake him up. Defendant opened his eyes briefly; they were bloodshot and glassy. Finally, Garvin was able to wake defendant. She asked him if he had been drinking, and he answered, "Probably." He said that he had driven to the place where she found him, but he did not know how or when or why. Garvin asked defendant to step out of the car and perform some field sobriety tests. Defendant took the tests and performed poorly. Garvin told defendant that she was arresting him for DUII, handcuffed him and placed him in the back of her patrol car.

Officer Newell and Detective McPherson arrived after Garvin handcuffed defendant. The officers decided to impound defendant's car. Newell took some pictures of it. Only one of those photographs is in the record. The photo is taken from the driver's side of the car. It shows that the

---

[1] The court denied defendant's motion to suppress Intoxilyzer test results. Defendant did not cross-appeal that ruling. ORS 138.040.

passenger door is open, and it shows what appears to be a white powder on the dashboard. There is no evidence that any officer seized the white powder, and there was no testimony about whether it was tested or what Garvin thought the substance was. The only evidence regarding a possible controlled substance is the photograph and Garvin's description of the powder's physical appearance.[2]

Defendant filed a motion to suppress, which stated, in its entirety:

"Comes now the above named Defendant, by and through his attorney, and respectfully moves the court for its order suppressing evidence concerning any controlled substance found in Defendant's car. This motion is based upon the affidavit of [defendant's attorney] attached hereto and made a part hereof as if set forth fully herein."

The attorney's affidavit was attached to the motion. The full text of the affidavit states:

"I am the attorney for the Defendant in the above entitled matter.

"The arresting officer, Toni Garvin, Central Point Police Department, testified under oath, at an administrative hearing, that the sole aim for contacting the Defendant was to enquire into his well-being, and as such, was to render emergency assistance.

---

[2] The following exchange provided the only testimony regarding the white powder:

"Q. O.K., I'm showing you a photograph that has been marked for identification as State's Exhibit No. One. Can you identify that photograph?

"A. Yes, this was—Officer Newell took pictures of the vehicle, and this was taken when we were attempting to secure it when we walked up to it.

"* * * * *

"Q. Officer Garvin, in State's One which has just been received into evidence there appears to be something that looks white on the dashboard. Can you tell the court what that is?

"A. There's a little baggie which was sitting on the dash which had some white powder residue in it, and then there was some white powder on the dash itself.

"Q. And that was found on the dash as it is exhibited in this picture at the time you made contact with [defendant]?

"A. Yes."

"I believe that any incriminating evidence arising from the intrusion by the law enforcement officer must be suppressed because of the nature of the intrusion.

"Further deponent saith naught."

A written motion to suppress serves dual functions. It frames the issues that the court will be required to decide, and it notifies the state of the contentions that it must be prepared to address at the hearing on the motion. *State v. Rodriguez*, 115 Or App 281, 285, 840 P2d 711 (1992); *State v. Johnson/Imel*, 16 Or App 560, 566-67, 519 P2d 1053, *rev den* (1974). Because the defendant in a criminal case is the proponent of the motion to suppress, it is the defendant who bears the responsibility of framing the issues contemplated by the motion.

In this case, defendant's motion asserted that Garvin found some "evidence concerning [a] controlled substance" in defendant's car, which is a zone of privacy that is protected by Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution. *See State v. Rhodes, supra*, 315 Or at 196-97; *State v. Brown*, 110 Or App 604, 609, 825 P2d 282 (1992). However, defendant's motion neither identified the evidence that he sought to suppress nor the intrusion[3] that might have produced that evidence, and it does not assert that any officer observed evidence from an unlawful vantage point.[4]

The state has the burden of proving, by a preponderance of the evidence, the lawfulness of a warrantless search. ORS 133.693(4); Or Const, Art I, § 9; *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991); *State v. Johnson*, 120 Or App 151, 155, 851 P2d 1160 (1993). However, defendant's

---

[3] It is conceivable that the police made two intrusions into defendant's car. First, it is possible that Garvin reached in through the window when she shook him. The state's brief assumes that is what happened, but the record does not indicate whether Garvin reached in to shake him or whether she grasped his arm, which was hanging out the window. We express no opinion about whether reaching in and shaking defendant could be construed as a search or a seizure. Second, it is possible that, after Garvin arrested defendant, the officers searched his car and seized the white powder, but the record does not indicate whether those events took place.

[4] Defendant was entitled to engage in pre-trial discovery to ascertain whether the officers searched his car, what evidence they may have seized and the results of any tests that might have been conducted on the evidence seized. ORS 135.815; ORS 135.825.

motion did not assert that any officer conducted a warrantless search, and it did not identify the evidence that was purportedly observed or seized. Defendant's motion to suppress was insufficient. *See State v. Miller*, 269 Or 328, 524 P2d 1399 (1974). The hearing did not alleviate that insufficiency. The court erred by granting the motion.

Reversed and remanded.