Submitted February 18, reversed and remanded on Counts 1, 2, 3, and 5; remanded for resentencing; otherwise affirmed May 29, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LARRY RICHARDS, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
110933856; A151186

328 P3d 710

Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Defendant appeals a judgment of conviction, entered after a bench trial, for attempted murder, ORS 163.115; ORS 161.405, assault in the second degree, ORS 163.175, two counts of unlawful use of a weapon, ORS 166.220, and two counts of menacing, ORS 163.190. He assigns error to the trial court's exclusion of a witness statement as hearsay, arguing that the statement falls within the "excited utterance" exception to the hearsay exclusionary rule. *See* OEC 802 (rule against hearsay); OEC 803(2) (hearsay rule does not exclude "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). The state concedes that the trial court erred in excluding the testimony, and we agree with and accept the state's concession.

Nonetheless, the state argues that we should affirm the trial court's judgment because the error was harmless. *See* Or Const, Art VII (Amended), § 3 (if "the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed"). We conclude that the error was harmless as to two of the counts, but it was not harmless as to the other four counts. Accordingly, we reverse in part and affirm in part.

Defendant's convictions arose from two altercations that occurred on the same day—one in which Smith was the victim, and one in which Branch was the victim. Defendant's sole defense was that he acted in self-defense. In support of his self-defense theory, defendant attempted to solicit the following testimony from his mother, Galvez, whom defendant's girlfriend, Rouse, had allegedly called during one of the altercations:

"[GALVEZ]: She called me frantically screaming and crying, talking about, 'They're jumping [defendant], they're jumping [defendant], you guys need to hurry up and get over here.'"

The state objected on hearsay grounds, after which the following exchange took place:

"[DEFENSE COUNSEL]: It's excited utterance, Your Honor.

"THE COURT:   Sustained. [To Galvez:] You can describe what happened. You can't quote anything that anyone said to you.

"[GALVEZ]:   I'm just describing what happened. I'm—

"THE COURT:   No. You can't say that, 'She said this to me.' You can describe how—

"[GALVEZ]:   Okay. I got a phone call, and what I heard on the other end—can I say that?

"THE COURT:   No.

"[GALVEZ]:   I got a phone call and I answered it."

As noted, the only issue is whether the trial court's exclusion of Galvez's testimony was harmless. According to the state, in light of the lack of credibility of Rouse and Galvez, there is no likelihood that the trial court would have found the excluded evidence credible enough to affect the trial court's conclusion that defendant did not act in self-defense. For his part, defendant argues that the error was not harmless because the erroneously excluded evidence would have (1) bolstered defendant's version of the events—specifically, that defendant acted in self-defense; and (2) undermined the state's assertion at trial that Rouse's testimony was not believable, by showing that she gave a consistent version of the events at the time of the incident—in other words, it would have helped rehabilitate the credibility of Rouse's testimony.

Evidentiary error is harmless if there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Our goal is to determine "the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Id.* In other words, "we do not determine, as a factfinder, whether the defendant is guilty. That inquiry would invite this court to engage improperly in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial[.]" *Id.*

We must assess the erroneously excluded evidence in light of other evidence in the record pertaining to that

issue. *State v. Johnson*, 225 Or App 545, 550, 202 P3d 225 (2009). If erroneously admitted or excluded evidence relates to a "central factual issue" in the case, it is more likely to have affected the trier of fact's determination than if it deals with a tangential issue. *Id.* (citing *State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003)). By contrast, if the particular issue to which the error pertains has little relationship to the issues being determined by the trier of fact, then there is less likelihood that the error affected the verdict. *Id.* We address the circumstances of each altercation in turn.

Defendant was convicted of two crimes arising from his altercation with Smith: unlawful use of a weapon (Count 4) and menacing (Count 6). At trial, the state presented evidence that defendant and his girlfriend, Rouse, arrived at Rouse's grandmother's house, where Rouse's brother (Smith), her sister (Anderson), and a family friend (Harris), were gathered on the porch. Rouse's siblings had recently received information that defendant had hit Rouse. Defendant arrived at the house "looking for trouble." After walking inside the house briefly, defendant went back to the front porch and gave Smith a "mean" look. Smith asked defendant if he had a problem, they exchanged some words, and defendant told Smith to "come down to the street" with him. Smith walked down to the street where defendant was and defendant pulled a box cutter from his pocket. Defendant was the only one with a blade. Smith became fearful and ran a few steps away, then returned and shook hands with defendant, ending the altercation.

In contrast, defendant testified that Smith had been sending defendant threatening text messages in response to the allegations that he had hit Rouse. According to defendant, he had not intended to go to the house that day, and only went there because he and Rouse were asked to pick up Harris. When he arrived, he asked Smith to go down to the street with him so that they could talk, but he did not intend to fight. While talking, Smith pulled out a knife, and defendant pulled out his box cutter to protect himself. After a brief discussion, they both put the blades away.

In that context, a central issue to defendant's self-defense theory was whether defendant saw Smith with a

knife. The erroneously excluded statement, "they're jumping [defendant]," was not relevant to that issue because, even if the statement were believed by the trier of fact, it would not tend to prove that Smith had a knife. Therefore, the statement would not have bolstered defendant's version of his encounter with Smith. Moreover, the excluded statement would not have rehabilitated the credibility of Rouse's trial testimony regarding defendant's encounter with Smith, because Rouse did not testify that multiple people had attacked defendant during that encounter. Thus, we conclude that, as to Counts 4 and 6, there is "little likelihood that the particular error affected the verdict." *Davis*, 336 Or at 32.

We now turn to the remaining counts. Shortly after the altercation between defendant and Smith ended, Anderson's boyfriend (Branch) arrived at the house and another altercation ensued. Defendant was convicted of four crimes arising from his altercation with Branch: attempted murder (Count 1), assault in the second degree (Count 2), unlawful use of a weapon (Count 3), and menacing (Count 5).

At trial, the state presented the following evidence. Branch went to the house that day because he was living there at the time and was under house arrest. When Branch arrived at the house, he approached defendant and defendant put up his hands as if ready to fight. Branch punched defendant, starting a fight. Although Rouse and Anderson also fought with each other, the fight between defendant and Branch was "one-on-one." Branch slammed defendant to the ground twice, and then thought the fight was over, but defendant pulled out the box cutter. Anderson said, "He's got a knife," and defendant told Branch, "Man, I'm going to kill you." Branch threw his hands up and tried to run away, but he tripped and fell to the ground and defendant got on top of him. Defendant cut Branch in the shoulder and leg. Smith grabbed defendant's arm, allowing Branch to get away. Branch was immediately taken to the hospital and treated for his injuries.

In contrast, defendant claimed that he cut Branch in self-defense, presenting evidence consistent with the

following. Anderson had been encouraging Smith to fight defendant, and when they did not fight, she called Branch and told him to come fight defendant. Defendant had received threatening phone calls from Branch, and Branch was known to carry weapons. When Branch arrived at the house, "he looked like he had a problem." After Anderson and Branch exchanged words, Branch approached defendant. Branch hit defendant in the face when defendant was not looking, and slammed him to the ground. While defendant was on the ground, Anderson hit him with her phone and fists, and kicked him. Smith was also kicking defendant. A blade—either the box cutter or a knife—fell to the ground and defendant, still on his hands and knees, grabbed it. Defendant started swinging the blade and everyone got off of him.

In that context, a central issue to defendant's self-defense theory was whether Branch, Smith, and Anderson were attacking defendant when defendant injured Branch, or, as the state asserted, whether defendant had attacked Branch while Branch attempted to retreat. The erroneously excluded statement, "[t]hey're jumping defendant," was relevant to that issue; if believed, it would have bolstered defendant's version of the events—specifically, that he had been attacked by multiple people at once. Because the excluded statement relates to a "central factual issue" in the case—whether defendant was being attacked by multiple people—it is more likely to have affected the court's verdict than if it had dealt with a tangential issue unrelated to defendant's self-defense argument. *Johnson*, 225 Or App at 550 (citing *Marrington*, 335 Or at 566).

The state argues, nonetheless, that the excluded statement would not rehabilitate the credibility of Rouse's trial testimony because she admitted that she had lied during the investigation and her credibility was "beyond repair." However, "our role is not to decide among the possible conclusions that the [trier of fact] could have drawn from the evidence." *State v. Hren*, 237 Or App 605, 608-09, 241 P3d 1168 (2010) (in theft case, erroneous exclusion of the defendant's testimony that a store employee told her she could take the stolen item was not harmless, despite "strong

evidence" that she did not believe she had a right to take the item); *see also State v. Barnes*, 208 Or App 640, 651, 145 P3d 261 (2006) (exclusion of testimony offered in part to impeach key witness's credibility was not harmless when it "could have been helpful to the jury"). Because the trier of fact could have believed Galvez's testimony and concluded that it rehabilitated the credibility of Rouse's testimony, we cannot decide that there was "little likelihood that the particular error affected the verdict." *Davis*, 336 Or at 32.

As a result of the trial court's erroneous exclusion of Galvez's testimony, the trier of fact did not have the benefit of all of the available evidence relevant to the question of whether defendant's actions were justified as self-defense. *See State v. Beisser*, 258 Or App 326, 339, 308 P3d 1121 (2013) (rejecting the state's argument that erroneous exclusion of eyewitness testimony was harmless and holding that the erroneous exclusion of the testimony deprived the trier of fact of "the benefit of all of the available evidence"). Thus, we conclude that the trial court's error in excluding Galvez's testimony was not harmless as to Counts 1, 2, 3, and 5, and we remand for a new trial on those counts.

Reversed and remanded on Counts 1, 2, 3, and 5; remanded for resentencing; otherwise affirmed.