On appellant's petition for reconsideration filed July 3, respondent's response to petition for reconsideration filed July 24, and appellant's reply to respondent's response to petition for reconsideration filed July 31, petition for reconsideration allowed; former disposition (263 Or App 683, 328 P3d 824) withdrawn; convictions on Counts 2 and 3 reversed and remanded; otherwise affirmed October 1, 2014, petition for review denied January 15, 2015 (356 Or 685)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JEFF EDWARD LAMBERT,
*Defendant-Appellant.*

Multnomah County Circuit Court
111034516; A151279

338 P3d 160

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, for petition.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jennifer S. Lloyd, Attorney-in-Charge, for response.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

GARRETT, J.

Defendant has petitioned for reconsideration of our decision in *State v. Lambert*, 263 Or App 683, 328 P3d 824 (2014). We held that the trial court erroneously denied defendant's motion to suppress "all evidence discovered pursuant to the warrantless and unlawful 'seizure' of his vehicle." *Id.* at 689. The trial court relied on the "administrative seizure" exception to the warrant requirement, but we concluded that the state had failed to demonstrate the applicability of that exception. Rather than reverse defendant's convictions outright, however, we concluded that the proper disposition of defendant's convictions on Counts 2 and 3 was to vacate and remand so that the trial court could consider whether the disputed evidence was "actually obtained" from the unlawful seizure. *Id.* at 699. In his petition for reconsideration, defendant argues that that disposition was incorrect because we should have decided that question of law on the existing record. For the reasons that follow, we agree with defendant and modify our opinion accordingly.

The relevant facts are taken from our opinion in *Lambert*, 263 Or App at 685-89. That case involved two different break-ins at a facility owned by the Portland Water Bureau (PWB). The facility is enclosed by a chain-link fence and is adjacent to "a piece of publicly accessible property that includes a nature path, a boat launch, and a parking area." *Id.* at 685.

The first break-in occurred in August 2011. A hole, which was large enough to drive a car through, was cut into the perimeter fence. Police discovered a "'4x4' decal, which appeared to have become detached from a vehicle, lying on the ground near the hole in the fence." *Id.* at 686. During the August break-in, numerous items were taken from the property, including a "pH pen," which is a small handheld device used to measure the pH of water. *Id.* at 686 n 1.

The second break-in occurred on the night of October 14, 2011. During that break-in,

> "PWB security observed a vehicle parked just outside the PWB site, on the adjacent public property, near the perimeter fence. They also observed an unknown person moving inside one of the tents. Portland police responded to

the scene. The vehicle, a Jeep Grand Cherokee, appeared to have been driven through the parking lot for the boat launch and onto a grassy area so that it was concealed behind a row of trees. Police also found that the lock on the PWB facility gate had been cut. Police observed defendant walk into one of the tents and eventually approach the fence. Defendant was arrested."

*Id.* at 686-87. After the arrest, defendant's vehicle was towed to the police impound lot, "a secure facility where police send cars 'as a matter of course.'" *Id.* at 687. Police "put a 'hold' on the vehicle, which served the purpose of notifying the police bureau's burglary task force so that they would 'eventually look at the vehicle.'" *Id.* at 687-88 (brackets in original).

Four days after defendant's vehicle was towed, Officer Lobaugh, a member of the burglary task force, "took the 4x4 decal to the vehicle impound lot. Upon examining the exterior of defendant's Jeep, Lobaugh discovered that it appeared to be missing a decal, and that the decal from the scene of the August break-in 'fit [the Jeep] like a puzzle.'" *Id.* at 688.

Lobaugh applied for a warrant to search the interior of defendant's Jeep. In his affidavit in support of the search warrant, Lobaugh stated:

"[P]olice at the scene of the August break-in had discovered a hole in the fence 'large enough to allow a vehicle to drive through'; that forensic specialists identified 'indistinct tire tracks visible on the ground, leading from a perimeter path through the hole in the fence'; and that police found 'a plastic 4x4 vehicle decal that had possibly been scraped off the side of a vehicle.'"

*Id.* at 688. With respect to the October break-in, Lobaugh averred:

"[D]efendant had been driving a 'Jeep Cherokee' and had 'made entry into the property by cutting though the fence'; that police observed blankets in the rear of defendant's vehicle that were 'clearly' concealing something from view; and that when Lobaugh compared the 4x4 decal that had been recovered in August with the spot on defendant's vehicle that appeared to be missing a decal, '[t]he glue to where the decal had been was still obvious and the decal seemed to fit exactly to that spot.'"

*Id.* The affidavit explained that police intended to search defendant's vehicle for items reported taken during the August break-in, including a red pH pen. *Id.* at 689. After the warrant was issued, police discovered a red pH pen in defendant's vehicle that was identical to the type of pen stolen in the August break-in. *Id.*

Before trial, defendant filed two motions to suppress. The first asked the trial court "for an Order suppressing evidence arising out of the search, pursuant to a search warrant, of [defendant's] 1992 green Jeep Cherokee ***." The second asked the trial court to suppress "all evidence discovered pursuant to the warrantless and unlawful 'seizure'" of his vehicle. The trial court denied both motions. As relevant here, the trial court denied the second motion on the basis that the tow of defendant's vehicle was a lawful "administrative seizure" because it was authorized by a section of the Portland City Code.

We held that the trial court erred in relying solely on the Portland City Code to conclude that the warrantless tow was lawful. To invoke the administrative seizure exception to the warrant requirement, the state must show not only that the seizure was authorized by law but that "suspicions of criminal activity play[ed] no part in the officer's decision to seize the property." *Id.* at 695 (internal quotation marks omitted). That showing was not made in this case. *Id.* at 697.

The state argued that, regardless of the seizure's legality, defendant's motion to suppress had been properly denied because the evidence at issue was admissible through an independent source—the search warrant that Lobaugh obtained. We disagreed, rejecting the state's analogy to *State v. Smith*, 327 Or 366, 693 P2d 642 (1998). In *Smith*, police seized the defendant's storage unit by padlocking it shut while waiting for a search warrant to issue. *Id.* at 369. In that case, the Supreme Court concluded that police did not "actually obtain" evidence from the seizure of the storage unit and, therefore, suppression was not required. *Id.* at 379-80. That was so because the unlawful padlocking of the storage unit merely secured whatever was inside it; that action itself did not contribute to the discovery of

evidence. *Id.* In *Lambert*, "by contrast, the seizure of defendant's Jeep at least facilitated the discovery of evidence by making it possible for * * * Lobaugh to inspect the Jeep at the impound facility," which led directly to the issuance of the search warrant. 263 Or App at 699.

Our treatment of the state's "independent source" argument, admittedly, was confusing. Although we rejected the state's analogy to *Smith*, we went on to note that the trial court, because of its ruling that the seizure was lawful, had not addressed "whether the pH pen and the evidence of the match of the 4x4 decal, like the evidence in *Smith*, 'would have been obtained even in the absence of the unlawful police conduct.'" *Lambert*, 263 Or App at 699 (quoting *Smith*, 327 Or at 380). In effect, without clearly differentiating between "independent source" and "inevitable discovery," we disagreed with the state's particular "independent source" rationale but concluded that a different rationale might support the conclusion that the evidence would have been "inevitably discovered" (*e.g.*, if police could have obtained the evidence of the 4x4 decal match at the scene, left the vehicle at the park, and then used that evidence to apply for and execute the search warrant). *Id.* at 699 ("[T]he record before us does not compel a conclusion either way. Although the seizure of the Jeep allowed Lobaugh to inspect the vehicle at the impound lot, it does not necessarily follow that the police could not have obtained the evidence another way."). The purpose for the limited remand in *Lambert*, therefore, was to allow both parties to fully develop those arguments.

On reconsideration, we conclude that it was error to remand in order for the trial court to consider whether the evidence would have been inevitably discovered. A remand in this situation is appropriate only if the record contains potentially conflicting evidence that needs to be resolved. *State v. Grover*, 193 Or App 165, 173, 90 P3d 8 (2004) (remand for further factual findings is appropriate only when "the need for a finding on a certain critical fact was obviated by the trial court's erroneous legal conclusions *and* where the existing record contained potentially *conflicting* evidence on that critical fact" (emphasis in original)). If the

seizure was unlawful and the record does not support the conclusion that police would have inevitably discovered the evidence, we must reverse because the state had the obligation to "develop a record sufficient to substantiate any and all grounds on which it might seek to justify the admission of that evidence." *State v. Marshall*, 254 Or App 419, 434, 295 P3d 128 (2013).

*Marshall* is instructive. In that case, we held that the trial court had improperly denied a motion to suppress because, contrary to the trial court's conclusion, the defendant had not voluntarily consented to a search. *Id.* at 433. We next considered the state's argument, presented for the first time on appeal, that police would have inevitably discovered the disputed evidence by obtaining a search warrant. Conceding that it had not made that argument to the trial court, the state urged us to reverse and remand to allow the trial court to consider the matter. *Id.* at 434. We declined to do so because the record was "silent as to whether officers would have inevitably obtained a warrant and searched the RV in the absence of the defendant's consent." *Id.* We further explained that

> "[t]he state, as the proponent of the evidence obtained from a warrantless search, had the opportunity—indeed, the obligation—to develop a record sufficient to substantiate any and all grounds on which it might seek to justify the admission of that evidence. To hold otherwise would invite piecemeal presentation and *seriatim* appeals of suppression disputes."

*Id.*

Here, we agree with defendant that, as in *Grover*, there is no "potentially conflicting evidence" on any fact that is critical to an assessment of an inevitable discovery or independent source argument. The undisputed evidence in the record shows that, soon after defendant's arrest, his vehicle was towed to the impound lot and the burglary task force was notified of its arrival. Four days later, a member of the burglary task force went to the impound lot and found that the 4x4 decal discovered after the August break-in likely came from defendant's vehicle. That discovery connected defendant's vehicle to the earlier August break-in

and allowed police to obtain a search warrant. It is possible to speculate that, had police not towed defendant's vehicle, they could have gained the same information by simply taking the decal to the public area where defendant's vehicle, presumably, would still be parked. The inevitable discovery doctrine, however, requires more than a showing that "evidence might or could have been otherwise obtained." *State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986) (internal quotation marks omitted). Rather, the state must show that the evidence "would have been discovered, absent the illegality, by proper and predictable investigatory procedures." *Id.* Here, the evidence in the record does not demonstrate that the 4x4 decal match "would have" been discovered regardless of the illegal seizure. The record is silent on that question.

In light of *Grover* and *Marshall*, the only conclusion to be drawn from this record is that, by unlawfully towing defendant's vehicle, police gained access to evidence—the 4x4 decal match—that otherwise would not have been available to them. That evidence must be suppressed. Without that evidence, the affidavit in support of the warrant would not have established probable cause to believe that the specified items would be in defendant's vehicle, because the 4x4 decal match was the only concrete evidence linking defendant, and his vehicle, to the theft of the items listed in the search warrant. *See State v. Clapper*, 216 Or App 413, 415, 173 P3d 1235 (2007) (discussing the standard for reviewing the sufficiency of a search warrant). Thus, the evidence discovered during the search must also be suppressed.

We note that, in response to defendant's petition, the state does *not* take the position that there is sufficient evidence in the record to conclude that the items subject to the motion to suppress would have been inevitably discovered without the unlawful seizure. Instead, the state's argument is entirely about preservation. The state contends that, in the trial court, defendant challenged the *seizure* but never expressly connected the seizure to the items that defendant sought to suppress. That is, defendant did not expressly argue to the trial court that the seizure led to the inspection at the impound lot, which led to the affidavit, which led to

the warrant. Had defendant done so, the state reasons, the prosecution would have had the opportunity to develop the argument that police would have obtained the warrant even *without* the seizure. The state argues that we should not grant defendant a reversal based on a record that is undeveloped because defendant failed to make the argument to the trial court that he now makes on appeal.

We disagree with the state's preservation argument, for reasons discussed in our original opinion. As we noted in *Lambert*, defendant's argument on appeal was based on his second motion to suppress. *Id.* at 698. That motion was directed, not at the warranted search of his vehicle, but at the warrantless seizure when police towed it to the impound lot. *Id.* When police obtain evidence of a crime after having violated a defendant's rights under Article I, section 9, of the Oregon Constitution, it is presumed that that evidence is tainted and must be suppressed. *See State v. Unger*, 356 Or 59, 84, 333 P3d 1009 (2014). That presumption, however, is rebuttable. As the Supreme Court has explained, "the state nevertheless may establish that the disputed evidence is admissible under Article I, section 9, by proving that the evidence did not derive from the preceding illegality." *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). As relevant here, the state may make that showing by proving that "the police obtained the disputed evidence independently of the violation of the defendant's rights under Article I, section 9." *Id.* (citing *Smith*, 327 Or at 379-80); *see also Unger*, 356 Or at 84 ("[W]e adhere to *Hall* in requiring the state to prove that the consent [to a warrantless search] was independent of, or only tenuously related to, the illegal police conduct.").

Defendant moved to suppress "all evidence" arising from the unlawful seizure of his Jeep. Because the seizure was unlawful, the burden shifted to the state to show that the evidence was nevertheless admissible. The state points us to no authority for the proposition that defendant, having challenged the admission of evidence resulting from the unlawful seizure, was required to separately, affirmatively demonstrate that the warranted search was *also* flawed because it flowed from the unlawful seizure. In fact, our case law is to the contrary. *See State v. Lovaina-Burmudez*, 257 Or App 1, 303 P3d 988, *rev den*, 354 Or 148 (2013) (despite

the subsequent issuance of a warrant, where evidence was inadvertently seized unlawfully, the burden remains on the state to show that the evidence is not tainted). In that light, the state's position on appeal that defendant failed to "preserve" the argument that the warranted search was tainted by the unlawful seizure misplaces the burden.

For the foregoing reasons, we conclude that the trial court erred by denying defendant's motion to suppress. We therefore reverse and remand defendant's convictions on Counts 2 and 3. Our resolution of Counts 4 and 5 is unaffected. *See Lambert*, 263 Or App at 700.

Petition for reconsideration allowed; former disposition withdrawn; convictions on Counts 2 and 3 reversed and remanded; otherwise affirmed.