Argued and submitted February 26, 2015, affirmed March 30, petition for review denied October 20, 2016 (360 Or 465)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLE DESHAVIAN ANDERSON-BROWN,
aka Will Desavion Andersonbrown,
*Defendant-Appellant.*

Multnomah County Circuit Court
130343124; A154648

369 P3d 1248

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

LAGESEN, J.

Defendant was convicted in a court trial of possession of heroin. ORS 475.854.[1] Before trial, he moved to suppress evidence of statements that he had made in response to questions by investigating officers. Defendant contended that he made those statements in response to interrogation conducted under compelling circumstances and that, under Article I, section 12, of the Oregon Constitution, the officers' failure to provide him with *Miranda* warnings before that interrogation required suppression of those statements. The trial court determined that there was a *Miranda* violation, but that only some of defendant's statements should be suppressed. On appeal, defendant contends that the trial court erred when it did not suppress all statements that defendant made after the *Miranda* violation. In addition, defendant argues that the trial court erred when it did not suppress physical evidence of heroin found in defendant's backpack on the basis that defendant's consent to search the backpack was derivative of the *Miranda* violation. For the reasons that follow, we conclude that defendant did not preserve his claim of error regarding the suppression of the physical evidence, that the trial court correctly did not suppress defendant's volunteered statement, and that any error by the trial court in declining to suppress defendant's other statements was harmless. We therefore affirm.

## BACKGROUND

The charge against defendant arose after Portland State University (PSU) public safety officer Buck, who was arresting defendant on outstanding warrants, found heroin in defendant's backpack. As Buck arrested defendant, defendant asked Buck if defendant could give his backpack to a friend before he was taken to jail. Buck asked defendant if he could search that backpack before giving it to defendant's friend, and defendant consented to the search. Inside the backpack, Buck found a metal tin that—as later

---

[1] ORS 475.854 provides:

"(1) It is unlawful for any person knowingly or intentionally to possess heroin[;]

"(2) Unlawful possession of heroin is a Class B felony."

laboratory tests revealed—contained heroin residue. A scorched spoon inside the backpack also tested positive for heroin residue.

Before his arrest, defendant and two other people had been huddled together in an area next to a building on the PSU campus that is closed to student access, and that is well-known for a high level of narcotics use. PSU public safety officer Chose observed defendant and his companions in that area and called Buck to assist him in approaching the group. A third officer, Smelter, joined them. The three officers were not armed, but were dressed in uniforms similar to police uniforms, displaying badges, and carrying radios.

As the officers approached the group, Smelter yelled, "Get your hands up." Defendant put his hands into his pockets and "behave[d] in a nervous manner." Buck, who was concerned about officer safety, commanded defendant to take his hands out of his pockets slowly. Defendant slowly took his hands out of his pockets and said, "I'm just freaking man. You guys startled me." Chose asked defendant's companion what she was doing and she responded, "It's obvious, isn't it?" Chose then *Mirandized* defendant's companion before asking her additional questions.

Around the same time, Buck asked defendant to step away from the group and speak with him. Buck asked defendant what the three had been doing. Defendant responded that their "intentions were to get high." Buck asked, "high on what?" Defendant said, "heroin." Buck inquired how long ago defendant had "shot up," and defendant said five to 10 minutes before the officers arrived. Buck asked defendant for his identification. Defendant explained that it was in his wallet in his back pocket, pulled it out, and handed his wallet to Buck. Buck passed the wallet to another officer who had joined the group, Schilling, who then passed it to Chose to check if defendant had any outstanding warrants.

Buck could see two used syringes, a small scale, and a tin cooker on the ground next to a backpack, which was next to defendant. Buck asked defendant if the backpack sitting on the ground was his, and defendant responded yes. Buck then asked defendant if the syringes, scale, and cooker

were his as well, and defendant responded yes. Defendant also admitted that the heroin had been his.

About that time, Chose came back and told Buck that defendant had warrants out for his arrest. Buck informed defendant he was under arrest and handcuffed him behind his back.

As noted, at that point, defendant asked Buck if he could hand off his backpack to a companion and give his Oregon Trail card, which was in defendant's wallet, to his girlfriend. That, in turn, led to Buck's request for consent to search the backpack, defendant's consent, and the discovery of the tin and the spoon containing the heroin residue. After removing the tin and the spoon from the backpack, Buck gave the backpack to defendant's friend, as defendant requested.

Defendant was charged with possession of heroin. Before trial, defendant filed a motion to suppress. In that motion, defendant argued that he had been in "compelling circumstances" during his encounter with the officers and that, as a result, under Article I, section 12, of the Oregon Constitution, the officers' failure to read him the *Miranda* warnings required suppression of "all statements [defendant made] in response to the [officers'] questions." At the hearing on that motion, the trial court noted that the motion only requested suppression of defendant's statements, and asked defendant about the scope of the motion. In response, defendant requested that he be permitted to "extend [his motion] just slightly" so that if the court "fo[und] that the statements themselves were made in a coercive atmosphere, *** that any consent to search as a result therefrom should also be—should also be thrown out as not consensual." But, defendant confirmed, "my main argument is that it's a coercive atmosphere and that [defendant's] statements should be suppressed."

The state opposed the motion. It argued that, although defendant was not *Mirandized* at the time he was arrested, defendant had initiated contact with Buck after his arrest and that, for that reason, defendant's post-arrest statements were admissible. With respect to defendant's pre-arrest statements, the state argued that those

statements were admissible because Buck's questions of defendant were not questions made with an "investigatory intent," but, rather, were made for the purpose of assessing defendant's need for medical assistance.

The trial court granted defendant's motion in part. It ruled that defendant's initial statements to Buck—"I'm just freaking, man"; "You startled me"; and, "Our intentions were to get high"—were admissible. It ruled that defendant's statements, made after Buck "started doing his investigation," were "out" because the officers had not provided defendant with *Miranda* warnings before Buck's questioning turned investigative. The court ruled further that defendant's consent to search was "valid," and declined to suppress the evidence of the heroin found during the search of defendant's backpack.

Both parties asked questions to clarify the scope of the court's ruling. The state asked whether defendant's statement indicating that the group had intended to get high on heroin was admissible. The court clarified that defendant's statements that the group had used heroin and that they had done so five to 10 minutes earlier, were not admissible. Defendant asked if his "claim of ownership of the backpack" was admissible, noting that he thought it was part of the same "conversation" that the court had ruled was inadmissible. The court ruled that defendant's claim of ownership was admissible because it "was during a different portion of the conversation."

After the court's ruling on the motion to suppress, defendant opted for a court, rather than a jury, trial. Before opening statements, the state confirmed with the court that, in accordance with the court's ruling, it had instructed the testifying officers that they were "not to mention anything with regards to the use of heroin by [d]efendant, [or his] admission to it," but that officers were permitted to testify that defendant had consented to a search of his backpack and had acknowledged ownership of the backpack. Consistent with that understanding, the state introduced evidence of defendant's statement that he was "freaking" and that the officers had startled him. The state did not introduce evidence of defendant's statement that the group's "intentions

were to get high." The state also did not introduce evidence that defendant had responded "yes" to Buck's question about ownership of the backpack. Instead, the state introduced evidence—through Buck's testimony—that, upon his arrest on the outstanding warrants, defendant asked Buck "if his buddy could take his backpack instead of me placing it in the property room," that Buck had then asked defendant "do you mind if I search your backpack," that defendant had consented to the search, that defendant had identified the backpack as his own and that, after Buck searched the backpack, Buck passed it on to defendant's friend "at [defendant's] request."

The trial court found defendant guilty as charged. Defendant appeals.

## ANALYSIS

On appeal, defendant contends that the trial court erred in two different respects. First, defendant argues that the circumstances became compelling at the moment defendant was directed to put his hands up and that, as a result, the trial court erred when it did not suppress all statements that defendant made after that point in time. Second, defendant argues that the physical evidence of heroin in defendant's backpack had to be suppressed because, in defendant's view, the state failed to demonstrate that his consent to search, even if voluntary, was not derived from the *Miranda* violation that the trial court determined had occurred. *See State v. Delong,* 357 Or 365, 350 P3d 433 (2015) (discussing framework for determining when evidence—apart from unwarned statements in response to interrogation—is "derived from" a *Miranda* violation).

We first address defendant's argument on appeal that the trial court erred when it did not suppress the physical evidence of heroin found in defendant's backpack after defendant consented to Buck's search of it. Defendant asserts that the state failed to demonstrate that his consent to search the backpack—even if voluntary—was not "derived from" the *Miranda* violation and that, as a result, suppression of the evidence found in the backpack was required. The problem for defendant is that neither his written motion to

suppress, nor his arguments at the hearing on that motion, alerted the trial court or the state that defendant sought to suppress the evidence in the backpack as evidence that was derivative of the *Miranda* violation.

As the proponent of a motion to suppress, a criminal defendant "bears the responsibility of framing the issues contemplated by the motion." *State v. Sweet*, 122 Or App 525, 529, 858 P2d 477 (1993). The defendant must do so in a way that informs the trial court of the issues that defendant is asking it to decide and that notifies the state of the contentions to which the state must be prepared to respond. *Id.* And, for the purposes of preservation of error, the defendant must do so in a way that makes the defendant's contention sufficiently clear to the state and the trial court so that they have the opportunity "to understand the contention and fairly respond to it." *State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011). The determination whether a defendant has made a contention clear enough to preserve it is a practical one that ultimately hinges on the particular record of the case. *Id.*

Here, the particular record of this case demonstrates that defendant did not raise the issue regarding the evidence in the backpack that he now urges us to decide in a clear enough way to preserve it. First, in his written motion, defendant asked only that the trial court suppress a specific category of statements made by defendant: "all statements made by the defendant in response to police questions while he was under compelling circumstances but was not given his *Miranda* warnings." That written motion did not alert the trial court that defendant sought to suppress any physical evidence.

Defendant's arguments at the hearing did not remedy the deficiency in his written motion. When the trial court asked defendant to confirm the scope of his motion, defendant told the trial court that his "main argument" was that defendant's "statements should be suppressed," but asked to extend his motion "just slightly" to permit defendant to challenge the validity of defendant's consent to search the backpack: "[I]f you find that the statements themselves were made in a coercive atmosphere, I think any consent

to search as a result therefrom \* \* \* should also be thrown out as not consensual." Although that argument indicated that defendant was asking the court to consider suppressing physical evidence, it was ambiguous as to defendant's theory of suppression. Specifically, the argument reasonably was susceptible to at least two different interpretations: that the evidence should be suppressed on the ground that the consent was involuntary (the theory on which, as explained below, the trial court ruled), or that the evidence should be suppressed on the ground that the consent was a product of the *Miranda* violation (the theory that defendant advances on appeal). It is clear from the record that the trial court understood defendant's theory to be the first one; as defendant acknowledges in his brief, "the trial court ruled that [] defendant gave voluntary consent to the search of his backpack." But defendant did nothing to indicate to the court that its understanding was wrong, or otherwise clarify to the court that he was advancing a different theory of suppression than the one on which the trial court ruled. Under those circumstances, we are unable to conclude that defendant preserved the argument for the suppression of physical evidence that he now raises on appeal.

Defendant argues that our decision in *State v. Lambert*, 265 Or App 742, 749-50, 338 P3d 160 (2014), requires a contrary conclusion. But the defendant in *Lambert* framed his motion to suppress quite differently from the motion to suppress filed in this case. In *Lambert*, the defendant alleged that his Jeep had been unlawfully seized by police and requested suppression of "all evidence" resulting from that unlawful seizure. *Id.* at 750. We concluded that, by requesting the suppression of "all evidence" arising from the alleged unlawful seizure, defendant preserved his argument on appeal that the unlawful seizure required suppression both of the evidence discovered directly as a result of the seizure, as well as any derivative evidence, including evidence discovered in a subsequent search pursuant to a warrant. *Id.*

Here, by contrast, defendant did not request suppression of "all evidence" resulting from the alleged *Miranda* violation. Instead, defendant made a much narrower request for suppression. He asked the court to suppress only

a restricted category of evidence, namely, "all statements made by the defendant in response to police questions while he was under compelling circumstances but was not given his *Miranda* warnings." Although he expanded the scope of his suppression motion at the hearing on it, he did so in a limited and ambiguous way. As a result, *Lambert* does not support the conclusion that defendant preserved his argument on appeal regarding the suppression of the evidence found in the backpack, and we decline to consider it on the ground that it is unpreserved.

As to defendant's statements, we start by observing that, regardless of any error by the trial court with respect to statements made before defendant's arrest, the trial court correctly declined to suppress the evidence that, after his arrest, defendant asked Buck "if his buddy could take his backpack instead of me placing it in the property room." As the state pointed out below, that request was not in response to police questioning but, instead, was a request made on defendant's own initiative after he was told that he was being arrested on the warrants. That type of volunteered statement, unprompted by police questioning, is admissible even if it was preceded by a *Miranda* violation. *Delong*, 357 Or at 375 (explaining that "[t]he concept of a volunteered statement has a unique place in *Miranda* jurisprudence").

As to the other statements that defendant contends should have been suppressed, we conclude that any error by the trial court was harmless for the following reasons.[2]

First, the strongest evidence of defendant's guilt was the heroin found in the backpack that defendant asked police to give to his friend.

Second, there is little likelihood that evidence that defendant stated that he was "freaking" and was "startled"

---

[2] For purposes of assessing harmlessness in this case, we assume without deciding that defendant's trial testimony was tainted by any error by the trial court and, as a consequence of that assumption, do not take into account defendant's trial testimony in determining whether the alleged errors are harmless. *See State v. Moore*, 349 Or 371, 385, 245 P3d 101 (2010) (discussing when a defendant's trial testimony may be considered in the context of harmless error analysis).

by officers affected the trial court's determination of guilt. *See State v. Richards*, 263 Or App 280, 282-86, 328 P3d 710 (2014) (applying harmless error analysis to evidentiary error in context of bench trial). That is because those statements were not particularly probative of the primary issue at trial: Whether defendant possessed heroin.

Third, as to the statement that the group's "intentions were to get high," the state ultimately did not introduce that statement at defendant's bench trial.[3] Because it was not introduced at trial, we are persuaded that there was little likelihood that any error by the trial court in declining to suppress affected the trial court's verdict.

Fourth, as to the fact that defendant answered "yes" to Buck's question regarding defendant's ownership of the backpack, we are also persuaded that any error by the trial court in declining to suppress evidence of that statement likely did not affect the verdict. Even absent defendant's answer to the question about owning the backpack, defendant's later request to give his backpack to his friend also identified the backpack as belonging to defendant, and we have concluded that the trial court properly admitted evidence of that volunteered request. Under those circumstances, any error by the trial court in not suppressing evidence that defendant said "yes" when Buck asked him if the backpack belonged to him is harmless.

---

[3] In his brief, defendant characterizes his trial as a "stipulated evidence" trial. To the extent that characterization suggests that defendant was convicted in a stipulated facts trial, the judgment indicates otherwise. In the section of the judgment indicating the procedure by which defendant was convicted, the trial court checked the box for "court trial" and did not check the box for "stipulated facts trial." The transcript further indicates that defendant was convicted in a court trial, and not a stipulated facts trial. Although the parties stipulated to the admission of the lab report at the court trial, when the trial court inquired whether the parties would stipulate to having the court decide the case on the testimony presented at the hearing on the motion to suppress, defendant indicated that he thought "we will need to have the officers testify again." At that point, the court stated that it was fine to have the officers testify "all over again," the state indicated that it would instruct the officers not to testify to any statements by defendant that the court had excluded, and the parties proceeded to try the entire case, with the state calling Chose and Buck as witnesses, and defendant calling himself as a witness. Under those circumstances, we understand the trial court's guilty determination to have been based on the evidence presented at the court trial, and not on the evidence presented at the hearing on the motion to suppress.

Finally, apart from defendant's unpreserved argument that his consent to search was "derived from" the prior *Miranda* violation so as to require suppression of the physical evidence found in defendant's backpack, we do not understand defendant to argue on appeal that the *Miranda* violation otherwise required the trial court to suppress evidence that defendant did, in fact, consent to a search of his backpack. However, to the extent defendant's brief can be construed to advance that argument, it is foreclosed by our case law. As we repeatedly have explained, "[A] consent to search is not an incriminating statement subject to suppression for a *Miranda* violation." *State v. Brown*, 100 Or App 204, 208 n 4, 785 P2d 790, *rev den*, 309 Or 698 (1990); *see State v. Hatfield*, 246 Or App 736, 743, 268 P3d 654, *rev den*, 352 Or 341 (2011) (collecting cases).

Affirmed.