Argued and submitted June 29, 2001, affirmed February 13, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# WENDELL CUNNINGHAM,
*Appellant.*

## C9903-32190; A107209

40 P3d 535

Peter Gartlan, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Defendant was convicted of being a felon in possession of a firearm. On appeal, he argues that the trial court should have suppressed a statement that he made when the arresting officer asked him, incident to a pat-down search, if he "ha[d] anything that would hurt me or was sharp?" Defendant argues that, because the officer's question constituted interrogation, he could not ask that question until defendant had been advised of and waived his *Miranda* rights. We affirm.

In March 1999, Officer Thomas McNurney noticed a fairly clean pickup truck, the rear license plate of which was obscured by dirt. McNurney stopped the truck and asked the driver for his license. The driver admitted that his license had been suspended. McNurney then asked defendant, who was a passenger in the truck, if he had a valid driver's license. Defendant said that he did not but gave McNurney an Oregon identification card. On checking to see whether defendant had any outstanding warrants, McNurney discovered that there was a warrant for a fish and game violation.

McNurney asked defendant to get out of the truck and told him that he was going to arrest him. He handcuffed defendant and, before beginning a pat-down search, asked him if he "ha[d] anything that would hurt me or was sharp?" Defendant responded, "Yes I do. There's a gun in the glove box and it's loaded." McNurney completed the pat-down search and put defendant in the patrol car. The driver of the truck consented to a search of the truck, and McNurney retrieved the gun.

It turned out that, in addition to having an outstanding warrant for a fish and game violation, defendant also had an earlier felony conviction. The state charged defendant with being a felon in possession of a firearm. Before trial on that charge, defendant moved to suppress both his answer to McNurney's question and the resulting evidence. Defendant argued that, because McNurney's question constituted interrogation, McNurney could not ask him that question until

defendant had been advised of and waived his *Miranda* rights. The trial court denied defendant's motion. It ruled, among other things, that McNurney's question did not constitute interrogation because it was a question normally attendant to arrest and custody. It followed, the trial court concluded, that no *Miranda* warnings were required. After the court denied defendant's motion to suppress, defendant stipulated that the court could try him based on the evidence elicited at the suppression hearing. Having considered that evidence, the trial court found defendant guilty.

■■ As a general rule, officers are required to give suspects *Miranda* warnings if they are subject to custodial interrogation. *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966); *State v. Fish*, 321 Or 48, 84, 893 P2d 1023 (1995). In this case, there is no dispute that defendant was in custody for the purposes of *Miranda* when McNurney questioned him. The issue turns instead on whether the officer's question constituted "interrogation." On that point, defendant acknowledges that Oregon has adopted, for the purposes of Article I, section 12, the definition of "interrogation" set out in *Rhode Island v. Innis*, 446 US 291, 100 S Ct 1682, 64 L Ed 2d 297 (1980). *See State v. Bradbury*, 80 Or App 613, 616, 723 P2d 1051, *rev den* 302 Or 342, 728 P2d 867 (1986) (adopting *Innis*'s definition of interrogation). Under that definition,

> "[t]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*Innis*, 446 US at 301.

That definition contains an exception for questions "normally attendant to arrest and custody," and the trial court ruled that McNurney's questions came within that exception. Defendant argues that the court erred in two respects. He argues initially that the exception is limited to "routine booking questions," which he views as "benign and ministerial record-keeping inquiries related to prisoner identification." He argues alternatively that, because

McNurney's question was "reasonably likely to elicit an incriminating response from [him]," *Innis*, 446 US at 301, it cannot be a question "normally attendant to arrest and custody."

■   The Court's opinion in *South Dakota v. Neville*, 459 US 553, 103 S Ct 916, 74 L Ed 2d 748 (1983), provides the answer to defendant's first argument. The Court explained that "a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*" because it is a question "normally attendant to arrest and custody." *Id.* at 564 n 15. The Court did not limit the exception for questions normally attendant to arrest and custody to routine booking questions, as defendant would. Rather, it reasoned that the question came within the exception because it was highly regulated by state law and presented in virtually the same words to all suspects. *Id.*[1]

Defendant advances an alternative argument. He appears to argue that the exception for questions normally attendant to arrest and custody is limited to questions that are not reasonably likely to elicit incriminating information. Defendant's alternative argument is at odds with the Court's reasoning in *Innis*. If defendant were correct, questions that are normally attendant to arrest and custody would never constitute interrogation, as *Innis* defined that term, because they would never be reasonably likely to elicit an incriminating response. If that were true, there would have been no reason for the Court to identify questions "normally attendant to arrest and custody" as an exception to its definition of interrogation. Rather, it would have been sufficient for the Court to say simply that interrogation consists of questions, words, and actions reasonably likely to elicit an incriminating response without also identifying an exception for questions normally attendant to arrest and custody. Conversely, by expressly excepting questions normally attendant to arrest

---

[1] To be sure, the exception includes routine booking questions. *See Pennsylvania v. Muniz*, 496 US 582, 601-02 & n 14, 100 S Ct 2638, 110 L Ed 2d 528 (1990) (plurality opinion). But it is not limited to them. The question whether a person will agree to take a blood alcohol test is not the sort of inquiry that is routinely asked whenever a person is booked into a correctional facility.

and custody from its definition of interrogation, the Court implied that some questions normally attendant to arrest and custody may also be reasonably likely to elicit incriminating information.

The plurality opinion in *Pennsylvania v. Muniz*, 496 US 582, 110 S Ct 2638, 110 L Ed 2d 528 (1990), confirms what *Innis* implied.[2] In *Muniz*, the defendant was arrested for driving while intoxicated (DWI) and taken to the booking center. 496 US at 585-86. Although the defendant had not been given *Miranda* warnings, the booking center asked him his name, address, height, weight, eye color, date of birth, and current age. *Id.* at 586. It also videotaped his responses. *Id.* at 585. In resolving the defendant's claim that his responses to those questions should have been suppressed, the plurality did not dispute that, in the context of a DWI investigation, those questions may have been reasonably likely to elicit incriminating testimonial responses from the defendant. *Id.* at 601. It concluded, however, that "Muniz's answers to these first seven questions [we]re nonetheless admissible because the questions fall within a 'routine booking question' exception which exempts from *Miranda*'s coverage questions to secure the ' "biographical data necessary to complete booking or pretrial services." ' " *Id.* (quoting the brief for the United States as *amicus curiae*).[3]

**4.** Although the exception for questions normally attendant to arrest and custody may include questions that are reasonably likely to elicit an incriminating response, the plurality was careful to explain that the exception did not give

---

[2] Although most of the opinion in *Muniz* serves as the opinion of the Court, Part III C of the opinion—the portion of the opinion that is relevant here—reflects the views of only a plurality of the Court. *See Muniz*, 496 US at 606 (Rehnquist, C. J., concurring in part, concurring in the result in part, and dissenting in part); 496 US at 608-09 (Marshall, J., concurring in part and dissenting in part).

[3] Four Justices concurred in the result that the plurality reached. 496 US at 606 (Rehnquist, C. J., concurring in part, concurring in the result in part, and dissenting in part). They would have held that the defendant's answers were not testimonial. *Id.* at 606-08. Given that position, those Justices found it unnecessary to reach the issue that the plurality did. There was no reason to decide whether questions that produced nontestimonial answers, and thus were not subject to *Miranda*, either constituted interrogation or fell within the exception for questions normally attendant to arrest and custody.

officers *carte blanche*. *See Muniz*, 496 US at 602 n 14. It noted:

> "As amicus United States explains, 'recognizing a "booking exception" to Miranda does not mean, of course, that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are *designed* to elicit incriminatory admissions.' "

*Id.* (emphasis added). The plurality thus recognized that, even though the exception for questions that are normally attendant to arrest and custody may include questions that are *reasonably likely* to elicit incriminating information, it does not include questions that are *designed* to do so. It follows that, if the police ask an otherwise permissible question with the intent to elicit incriminating information, the answer will be suppressed unless the police have first given the suspect *Miranda* warnings.[4] *See id.*

In this case, McNurney asked defendant whether he had anything that was sharp or would hurt him before performing a concededly lawful pat-down search. McNurney testified that, in his experience, many people carry needles and other sharp objects in Multnomah County. He also testified that he was trying to prevent injury to himself from a needle or a razor blade. The trial court credited McNurney's testimony and found that "the officer's question to defendant was implicitly limited to things on defendant's person that might injure the officer during the frisk." The court also found that "[t]here is no evidence in this case that the question asked of defendant was intended [or] designed * * * to elicit an incriminating remark from defendant."

■■ We conclude that McNurney's question was one that is normally attendant to arrest under *Neville* and *Muniz*.[5] During stops and arrests, officers may perform a prophylactic pat-down search of the suspect to ensure that he or she has

---

[4] Of course, the evidence should not be suppressed if other exceptions to the *Miranda* doctrine apply.

[5] We find the plurality's reasoning in *Muniz* and the Court's reasoning in *Neville* persuasive under Article I, section 12.

no weapons or other harmful items. *See State v. Hoskinson*, 320 Or 83, 87, 879 P2d 180 (1994) (whenever a person is taken into custody, a pat down or limited search for weapons to protect the officer is justified); *State v. Bates*, 304 Or 519, 523-24, 747 P2d 991 (1987) (recognizing that officers may conduct limited searches for officer safety during *Terry* stops). An officer may also search incident to arrest for evidence of the crime for which the suspect has been arrested. *State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986).

■ Before conducting such searches, an officer may ask, as the trial court found that McNurney did here, whether the suspect has anything sharp or that could hurt the officer in order to avoid the potential transmission of disease or possible contact with harmful fluids. The purpose of such a question is to protect an officer's safety, not to discover incriminating evidence. *Cf. Bates*, 304 Or at 523-24 (discussing the purpose of searches for officer safety). Indeed, the expected answer to McNurney's question was a simple "yes" or "no." The answer was not itself incriminating, even though it could possibly lead to the discovery of incriminating evidence. *See United States v. Carillo*, 16 F3d 1046, 1049-50 (9th Cir 1994) (noting that substantially the same question was "non-investigatory" because it "called for a 'yes' or 'no,' not a testimonial response"); *cf. Neville*, 459 US at 564 n 15 (question whether a person arrested for driving while intoxicated will take a blood-alcohol test is one normally attendant to arrest and custody even though a "yes" answer could lead to the discovery of incriminating evidence).

Because McNurney's question served a noncriminal, noninvestigatory purpose, it fell squarely within the class of questions that are normally attendant to arrest and custody, at least so long as it was not "designed to elicit an incriminatory response." *See Muniz*, 496 US at 601-02 & n 14. In this case, the trial court implicitly accepted McNurney's testimony that he asked the question to avoid injury when he conducted a pat-down search of defendant. It also explicitly found that the question was neither intended nor designed to elicit incriminating evidence. Given the trial court's findings, we are satisfied that the question McNurney asked here was

one normally attendant to arrest and that no *Miranda* warnings were necessary before he asked it. We accordingly affirm the trial court's ruling denying defendant's motion to suppress.[6]

    Affirmed.

---

[6] Because we conclude that McNurney's question was one normally attendant to arrest, we do need not to decide whether it would also be appropriate under the public safety exception to interrogation recognized in *New York v. Quarles*, 467 US 649, 657, 104 S Ct 2626, 81 L Ed 2d 550 (1984), or whether it would be appropriate to recognize that exception under Article I, section 12.